IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ODIS L. TABOR           )
                        )
    Plaintiff,          )
                        )
    v.                  )     1:08CV614
                        )
THOMAS BUILT BUSES, INC.)
                        )
    Defendant.          )

**MEMORANDUM OPINION AND ORDER**

OSTEEN, JR., District Judge

On June 15, 2009, Defendant Thomas Built Buses, Inc., filed a Motion for Summary Judgment and a memorandum and exhibits in support of the motion. (Docs. 19-21.) Plaintiff Odis L. Tabor filed a timely response and memorandum in opposition to Defendant's motion on July 7, 2009. (Doc. 22.) Defendant filed a reply with additional exhibits on July 22, 2009. (Docs. 23, 24, 25.) For the reasons stated herein, Defendant's motion will be granted.

**I. Background**

Plaintiff applied for employment with Defendant on May 23, 2008, through a temporary agency, Temporary Resources, Inc., ("TRI"). On May 27, 2008, Plaintiff was notified that he would not be hired to work at Defendant's facility. Plaintiff alleges that Defendant violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. (2006), by discriminating against him for engaging in protected activity, namely, for prosecuting a

prior discrimination lawsuit against a related company, Freightliner of Cleveland, LLC., ("Freightliner"). § 2000e-3(a).

As this is a motion for summary judgment, the following facts are either undisputed or presented in the light most favorable to the nonmoving party.

**A. Freightliner Lawsuit**

Freightliner and Thomas Built Buses are two subsidiaries of Daimler Trucks North America, LLC. (App. Mem. Supp. Def.'s Mot. Summ. J. Ex. 3 (Doc. 21) (Daimler Website).) Plaintiff worked at Freightliner until February 5, 2007. (Tabor Dep. Ex. 1 at 3 (application for employment at TRI).) Plaintiff claimed that he was discriminated against and terminated by Freightliner because he is biracial. Tabor v. Freightliner of Cleveland, LLC, No. 1:08CV34, 2009 WL 1175329, at *1 (M.D.N.C. May 1, 2009). According to Freightliner they terminated Plaintiff because "Tabor was a danger to our workplace." Id. at *3 (citations omitted). Freightliner's decision was based on two altercations, one of which involved a knife.[1] Id. Plaintiff filed suit on December 13, 2007, claiming unlawful discrimination by Freightliner in violation of 42 U.S.C. § 2000e-1(a). Id. This court granted summary judgment for Defendant Freightliner, finding in part that:

---

[1] Plaintiff maintains that the knife was only a toy knife and that he was acting defensively. (Pl.'s Resp. & Mem. Opp'n Def.'s Mot. Summ. J. (Doc. 22) at 3-4.)

> Defendant [Freightliner] has shown that there is no genuine issue of material fact for trial. Specifically, Defendant has produced evidence demonstrating that no one outside of Plaintiff's protected class engaged in comparable conduct and received less severe discipline for that conduct. Plaintiff has failed to advance sufficient admissible proof showing that he had been disciplined more severely than other employees outside his protected class. Thus, "there [is] no disparity of treatment from which one could conclude that his discipline was a product of racial discrimination."

Id. at *6 (quoting Cook v. CSX Transp. Corp., 988 F.2d 507, 512 (4th Cir. 1993)). Plaintiff has appealed to the United States Court of Appeals for the Fourth Circuit, which has not yet ruled.

The facts or merits of Tabor v. Freightliner are not at issue in this case. A defendant does not have to prevail in a discrimination lawsuit in order to be protected from retaliatory employment action by § 2000e-3. Plaintiff need only have "made a charge, testified, assisted, or participated . . . in an investigation, proceeding or hearing," to be protected. 42 U.S.C. § 2000e-3(a). Therefore, the substance or outcome of the prior suit is not relevant to the present question of retaliation. Plaintiff's participation in the prior suit is not disputed.

**B.   Plaintiff's Application at Thomas Built Buses, Inc.**

Plaintiff applied for employment with Defendant through TRI on May 22, 2008. (Tabor Dep. at 42.) TRI is an independent

3

temporary employment agency and the primary agency that Defendant used for hiring temporary workers. (Ingram Aff. ¶ 2.) Defendant Thomas Built Buses, Inc., like Freightliner, is a subsidiary of Daimler Trucks North America, LLC. (App. Mem. Supp. Def.'s Mot. Summ. J. Ex. 3 (Doc. 21) (Daimler Website).) Plaintiff completed the necessary background check, drug test, and written test. (Pl.'s Resp. & Mem. Opp'n Def.'s Mot. Summ. J. (Doc. 22) at 6 (citing Tabor Dep. at 55-56; Biles Dep. at 76).)[2] Plaintiff told TRI that he had been previously employed at Freightliner. (Tabor Dep. at 53.) Melissa Biles, the Industrial Staffing Manager at TRI who interviewed Plaintiff, thought highly of Plaintiff and told him, "You're an excellent candidate. There's nothing to prevent you from getting on, being employed, because we need people." (Pl.'s Resp. & Mem. Opp'n Def.'s Mot. Summ. J. (Doc. 22) at 7.) She decided to hire him as a TRI employee as a result of his interview. (Biles Dep. at 25.) Plaintiff was scheduled for a drug test and an orientation on May 28, 2008, including a tour of Defendant's facility. (Tabor Dep. at 62-65.) However, a TRI employee called Plaintiff on or about May 27, 2008, before his scheduled orientation, and informed him that he was not

---

[2] The court necessarily cites to Plaintiff's pleadings because it was not provided with the complete depositions. Citing to depositions or affidavits in pleadings without filing the document is not appropriate. See LR7.3(e). Nevertheless, the court will assume, in the absence of an objection, that the citations are correct.

4

eligible for hire by Defendant. (Id. at 69.) Plaintiff believes and contends he was not hired solely in retaliation for his pending lawsuit against Freightliner. (Id. at 102-07.)

**C.   Communications Between TRI, Defendant, and Freightliner**

On May 23, 2008, the day after Plaintiff applied for a job with Defendant through TRI, Robyn Harris of TRI contacted Yolanda Ingram in Defendant's human resources department. (Ingram Aff. at 3.) Ms. Harris asked whether Plaintiff was eligible to be hired based upon his prior employment with Freightliner. (Id.) Her question conformed with the normal practice of TRI and Defendant. (Id. at 2.) Ms. Ingram contacted Freightliner to determine why Plaintiff had been let go from Freightliner. (Id. at 3.) Freightliner's representative responded by email that "We terminated [Plaintiff] for cause and he has a pending lawsuit and grievance that will be scheduled for arbitration in the future." (Ingram Aff. Ex. B (email from Mr. Klinedinst at Freightliner to Ms. Ingram).) Defendant's policy was not to hire any former employee of an affiliated company who had been terminated for cause. (Ingram Aff. at 2.) Ms. Ingram then informed Ms. Harris at TRI that Plaintiff was not eligible to work for Defendant. (Id. at 3.) This email is the only communication in evidence between Freightliner and Defendant as to the nature of the lawsuit filed by Plaintiff against Freightliner.

5

### D. Defendant's Job Openings

Defendant regularly hired temporary hourly employees through TRI. (Pl.'s Resp. & Mem. Opp'n Def.'s Mot. Summ. J. (Doc. 22) at 7.) TRI continuously interviewed and screened prospective workers for Defendant, "whether [Defendant] had those openings immediately that we could send people on or not." (Biles Dep. at 69.) TRI interviewed and recruited, "sometimes when [Defendant] didn't want anybody," in order to "just try to keep them — get them qualified and have them on file so that when the client company called, we had them available." (Id. at 70.) Plaintiff testified in his deposition that TRI told him, in regard to employment with Defendant, "We need people immediately in positions, because we [are] in desperate need for people." (Tabor Dep. at 65.) At her deposition, Ms. Biles did not remember whether Defendant was hiring at that time, but she did remember that TRI was interviewing and seeking applicants.[3] (Biles Dep. at 68-69.)

Defendant hired its last temporary hourly employee on May 21, 2008, before Plaintiff applied. (Ingram Aff. ¶ 6.) All temporary hourly employees were laid off by early June 2008.

---

[3] Defendant objects to the admissibility of Biles' testimony "about whether [Thomas Built Buses] was hiring" as "inadmissible because it is not based on Biles'[] personal knowledge." (Def.'s Reply (Doc. 23) at 5.) Because the court finds that Defendant was not hiring, even drawing all reasonable inferences in favor of Plaintiff, the court need not consider the admissibility of these statements.

6

(Ingram Aff. Ex. D (June 6, 2008, memo from Defendant's President to employees).) While Plaintiff asserts that at least one person was hired and began to work for Defendant after his interview, he is unable to provide her name or any evidence other than hearsay statements. (Tabor Dep. at 80-81.) Even though the court at summary judgment views the facts in the light most favorable to the nonmoving party, Plaintiff "cannot rely solely on unsupported assertions to demonstrate that a genuine issue of material fact exists." Brown v. Sears Auto. Ctr., 222 F.Supp.2d 757, 761 (M.D.N.C. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

**II. Legal Standard**

Summary judgment is appropriate if an examination of the pleadings, affidavits, and other discovery materials before the court demonstrates that no genuine issues of material fact exist, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations and footnote omitted) (quoting Fed. R. Civ. P. 56).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing all reasonable inferences favorable to that party. Id. at 255. However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48.

Rule 56(e)(1) requires that "[a] supporting or opposing affidavit must be made on personal knowledge, set[ing] out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1). "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial." Kennedy v. Joy Tech., Inc., 269 Fed.Appx. 302, 308 (4th Cir.

8

2008) (citing Maryland Highways Contractors Ass'n, Inc. v. State of Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.")).

### III. Title VII Discrimination

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must establish "(1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action by her employer; and (3) a causal connection existed between the protected activity and the adverse action." Badgett v. Fed. Express Corp., 378 F.Supp.2d 613, 627 (M.D.N.C. 2005) (citing Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004)). The first element covers a plaintiff who "opposed any practice made an unlawful employment practice" under Title VII, or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "There is no dispute that the filing of . . . a lawsuit based upon unlawful employment discrimination . . . [is] protected activity." Badgett, 378 F.Supp.2d at 627. The second element, adverse employment action, includes failure to hire a qualified applicant, at least where the employer sought applicants and the position remained open after the complaining applicant was rejected. McDonnell Douglas

9

Corp. v. Green, 411 U.S. 792, 802 (1973). [4]

If a plaintiff establishes a prima facie case, the burden shifts to the defendant "to rebut the presumption of retaliation by articulating non-retaliatory reasons for its actions." Dowe v. Total Action Against Poverty In Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998); see also McDonnell Douglas Corp., 411 U.S. at 802 ("burden then must shift to employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection"). "If [defendant] meets its burden of production, the presumption raised by the prima facie case is rebutted and 'drops from the case,' and [plaintiff] bears the ultimate burden of proving that she has been the victim of retaliation." Dowe, 145 F.3d at 656 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-11 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)).

---

[4] The second element of a prima facie case, "an adverse employment action," has been recently clarified by the Supreme Court. Hooper v. North Carolina, No. 1:04CV0014, 2006 WL 2850596, at *14 (M.D.N.C. Oct. 3, 2006) (citing Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 67-70). The retaliatory action must be such that a "reasonable employee would have found the challenged action materially adverse." Burlington Northern, 548 U.S. at 68. This new statement of the law does not change this court's analysis. Failure to consider or hire an employee would meet this standard, at least where a position remained open and other candidates were considered or hired. See supra Section IV A. The Court in Burlington addressed a reassignment of duties as a purported retaliatory action, and did not suggest any change to the analysis set forth in McDonnell Douglas. Burlington Northern, 548 U.S. at 71.

10

## IV. Analysis

For two reasons, this court finds that Plaintiff has failed to establish a prima facie case. The evidence is insufficient to create a genuine issue of material fact as to the existence of an adverse employment action. Furthermore, the evidence is insufficient to establish a causal link between the protected activity and the adverse action. Accordingly, Defendant's Motion for Summary Judgment should be granted.[5]

### A. Adverse Employment Action

In order to establish a prima facie case, Plaintiff must show that Defendant took some materially adverse action, which would include failing to hire him for an open position. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Plaintiff may establish this "by showing . . . that he applied and was qualified for a job for which the employer was seeking applicants," and "that, after his rejection, the position remained open and the employer continued to seek applicants, from

---

[5] As an alternative basis for summary judgment, Defendant argues pursuant to Raytheon Co. v. Hernandez, 540 U.S. 44 (2003), that its "no-rehire policy is a quintessential legitimate, non-discriminatory reason." (Def.'s Mem. Supp. Def.'s Mot. Summ. J. (Doc. 20) at 10 (quoting Raytheon, 540 U.S. at 54-55).) Because the court finds that Plaintiff fails to establish a prima facie case of discrimination under the first step of the McDonnell Douglas analysis, the court does not reach the second step of whether Defendant articulates a "legitimate non-discriminatory reason." Raytheon, 540 U.S. at 50 n.3.

persons of complainant's qualifications." Id.;[6] see EEOC v. Sears & Roebuck Co., 243 F.3d 846, 851, (4th Cir. 2001).

To establish this element, Plaintiff alleges that Defendant "notified [P]laintiff that he was disqualified and would not be considered for employment, regardless of his qualifications." (Pl.'s Compl. (Doc. 3) ¶ 7.) Two possible materially adverse actions are consistent with this language — a failure to consider Plaintiff for employment, and a failure to hire Plaintiff. Courts generally do not distinguish the two actions as separate bases for establishing a prima facie case but analyze refusal "to consider and hire" together. See, e.g., EEOC v. Poplar Springs Nursing Ctr., No. 4:08CV112TSL-LRA, 2009 WL 387335, at *1 (S.D.Miss., Feb. 13, 2009); EEOC v. A.S.G., Inc., No. C-3-89-164, 1990 WL 284505, at *1-2 (S.D.Ohio, Oct. 22, 1990) (referring to failure "to consider and hire," but only analyzing hiring); EEOC v. Spokane Concrete Prod., Inc., 534 F.Supp. 518, 520 (D.C.Wash., 1982). Even if the failure to consider an employee,

---

[6] The Court in McDonnell Douglas acknowledged that "facts will necessarily vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." McDonnell Douglas, 411 U.S. at 802 n.13. Despite this caveat, this court finds here that the absence of an open position does not provide facts which give rise to an inference of unlawful discrimination. EEOC v. Sears, 243 F.3d at 851 n.2 ("What is critical with respect to the fourth element is that the plaintiff demonstrate that he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'") (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

12

independent from the failure to hire, meets the requirement for a materially adverse action, Plaintiff would have to establish that later candidates were considered for the position, in addition to establishing the third element of causation. See infra Section III.

The facts in this case do not support a finding that Defendant had any open positions or considered and hired anyone else.[7] Plaintiff testified in deposition that he was told that Defendant was hiring and "in desperate need for people," by a TRI employee. (Tabor Dep. at 65.) That statement, standing alone, does not appear to have an adequate foundation. However, even assuming for purposes of this motion that this statement was made by an agent of Defendant and would be admissible at trial, it fails to overcome the evidence that Defendant did not in fact hire anyone. The record is effectively uncontroverted that the last temporary hourly position was filled before Plaintiff applied. (Ingram Aff. ¶ 6.) The fact that all such employees were laid off within a month of Plaintiff's application further supports a finding that there was no job available. (Ingram Aff. Ex. D (June 6, 2008, memo from Defendant's President to employees).)

---

[7] Plaintiff applied for a position with the temporary agency TRI for placement at Thomas Built Buses but has named only Thomas Built Buses a defendant.

13

In rebuttal to Defendant's evidence, Plaintiff offers only his recollection that an unidentified declarant told an unidentified woman "that she would start the very next day," or "[w]e need somebody to start tomorrow and you will start tomorrow."[8] (Tabor Dep. at 80-81.) Plaintiff's statement alone, absent any identification or supporting information, and in the face of the dated memo from Defendant's President and deposition testimony offered by Defendant, is insufficient to create a genuine issue of material fact. Inadmissible hearsay cannot create such an issue. Kennedy v. Joy Tech., Inc., 269 Fed.Appx. 302, 308 (4th Cir. 2008). The statement lacks any foundation; without identification of the declarant, it cannot be considered as an admission of a party opponent.[9]

Even if admissible, the statement is exactly the sort of "unsupported assertion[]" that cannot create a genuine issue of

---

[8] In his deposition, Plaintiff identifies the declarant as a female manager, but does not give her name or specify whether she worked for TRI or Defendant. (Tabor Dep. at 81.) Plaintiff's brief offers no further clarity, stating simply that "plaintiff knows that one of the other applicants actually did go to work for defendant." (Pl.'s Resp. Mem. Opp'n Def.'s Mot. Summ. J. (Doc. 22) at 8.)

[9] Plaintiff does not suggest a theory of admissibility for the statement. (Pl.'s Resp. Mem. Opp'n Def.'s Mot. Summ. J. (Doc. 22) at 8.) Some identification of the declarant is necessary in order to determine if the declarant was "a person authorized by the party to make a statement concerning the subject" or a "party's agent or servant concerning a matter within the scope of the agency or employment." Fed. R. Evid. 801(d)(2).

14

material fact.  Brown v. Sears Auto. Ctr., 222 F.Supp.2d 757, 761 (M.D.N.C. 2002).  "Judges are not 'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.'"  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986)).  Absent any evidence that Defendant actually hired the unnamed woman, Plaintiff fails to establish that "after his rejection, [a] position remained open and the employer continued to seek applicants."  McDonnell Douglas, 411 U.S. at 802.

**B.    Causation**

The third element of a prima facie case of retaliation under Title VII is a causal link between the protected activity and the adverse employment action.  Dowe v. Total Action Against Poverty In Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998).  Knowledge of the protected activity is a prerequisite of causation:

> To satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity.  Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of a prima facie case.

Dowe, 145 F.3d at 657.  See Brown v. Sears Auto. Ctr., 222 F.Supp.2d 757, 763 (M.D.N.C. 2002) ("Multiple federal courts have determined that a causal connection between the adverse

15

employment action and the protected activity cannot be established when the decision-maker involved did not know that the plaintiff had engaged in the protected activity.").

In the present case, Defendant's employee Ms. Ingram communicated to TRI, via email, that Plaintiff was "not eligible" for employment with Defendant. (Ingram Aff. Ex. C (email from Ms. Ingram to Ms. Harris at TRI).) Ms. Ingram's decision was based on the email from Freightliner that "[w]e terminated [Plaintiff] for cause and he has a pending lawsuit and grievance that will be scheduled for arbitration in the future." (Id. Ex. B (email from Mr. Klinedinst at Freightliner to Ms. Ingram).)

The evidence that Defendant knew Plaintiff had a "lawsuit and grievance" against Freightliner is undisputed, but no evidence has been presented that Defendant knew the nature of the lawsuit or grievance. It might be a reasonable inference from the context of the email that the lawsuit related to Plaintiff's termination, but not that the lawsuit constituted activity protected by Title VII.[10] This lawsuit and grievance could just

---

[10] In both Dowe and Brown, the evidence showed that the defendants lacked any knowledge of the existence of a complaint or other protected activity. Dowe, 145 F.3d at 657, Brown, 222 F.Supp. at 762. In this case, the evidence shows that Defendant knew of the existence of a lawsuit and grievance but had no knowledge of the nature of the lawsuit or the grievance.
There is no evidence to suggest that Defendant either had additional knowledge of Plaintiff's complaint and grievance or turned a blind eye to knowledge about Plaintiff's complaints under Title VII. Therefore, this court finds the evidence insufficient to show that Defendant had knowledge Plaintiff

16

as reasonably have been related to any number of issues which are not implicated or protected by Title VII. Nothing in the email suggests that the lawsuit related to discrimination, nor has Plaintiff presented evidence which would permit an inference based on anything other than conjecture.

In the absence of evidence of Defendant's knowledge of protected activity, the Plaintiff cannot make the required prima facie showing of causation.

In addition to the email, Plaintiff's only other evidence of causation is his personal statement about how the hiring process works. Plaintiff maintains in his deposition that Defendant refused to hire him in retaliation for his discrimination lawsuit based on his knowledge obtained "by dealing with Mr. Klinedinst and by dealing with corporations" and his belief that the only appropriate question to Freightliner was "if I was qualified." (Tabor Dep. at 102-06.) Plaintiff further maintains that the reason for his termination from Freightliner is not relevant. Plaintiff stated,

> [T]he basis of my termination and the hiring at Thomas Bus is two separate and different issues. My termination

---

engaged in a protected activity as is required by Dowe. See, e.g., Grizzle v. Travelers Health Network, 14 F.3d 261, 267 (5th Cir. 1994)("Grizzle introduced no evidence which would suggest that either Goltz or Snyder advised Latiolais of the precise nature of her "complaints" to them. Only impermissible speculation could account for a finding that Latiolais' decision to terminate Grizzle was causally connected to her "complaints.")

17

>     should never ever hinder the fact of me being able to
>     have a job or be re-hired anywhere by any company based
>     on the termination of that job. And that infraction did
>     not disqualify me by my qualifications.

(Id. at 107.) "A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case of discrimination." Mackey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 2004).

Based upon the evidence presented, this court finds that Plaintiff cannot establish a prima facie case as to the third required element of a causal link between the protected activity and the refusal to hire.

## V. Conclusion

For the reasons set forth herein, Defendant's motion for summary judgment (Doc. 19) is **GRANTED**. A judgment in accordance with this opinion will be filed contemporaneously herewith.

This the 12th day of January 2010.

/s/ William L. Osteen, Jr.
United States District Judge